JASTA's statement of purpose explains:
The purpose of this Act is to provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States.
JASTA § 2(b).
DISCUSSION
I. DIRECT LIABILITY UNDER ATA
Defendants argue that under the Ninth Circuit's Fields opinion Copeland's allegations do not and cannot plausibly allege proximate cause as required to state a claim under § 2333(a) because they cannot allege a direct relationship between defendants' services and the Nice Attack. In Fields , the Ninth Circuit affirmed my decision dismissing a similar claim asserted under the ATA for lack of proximate cause. The panel explained that proximate cause under the ATA required a "direct relationship" between the defendant's conduct and the injury, and that Fields failed to plead that direct relationship based on "Twitter's provision of communication equipment to ISIS, in the form of Twitter accounts and direct messaging services." Fields , 881 F.3d at 749. The Ninth Circuit noted that because Fields pleaded "no facts indicating that Abu Zaid's attack was in any way impacted, helped by, or the result of ISIS's presence on the social network," Fields could not state her claim. Id. at 750.
Copeland argues, first, that Fields was wrongly decided by the Ninth Circuit (citing to out-of-circuit cases adopting different causation standards) and, second, that Fields did not address JASTA, which fundamentally altered the landscape. On the first argument, I will follow the binding precedent of Fields and the "direct" proximate cause standard. On the second argument, I agree with the numerous decisions that have concluded that JASTA did not address or undermine Fields's conclusion regarding the proximate cause required for direct liability. Instead, JASTA simply added a new cause of action under § 2333(d) for aiding and abetting secondary liability. See, e.g., Gonzalez v. Google, Inc. , 335 F.Supp.3d 1156 (N.D. Cal. 2018) ( Gonzalez II ); Gonzalez v. Google, Inc. , 282 F.Supp.3d 1150 (N.D. Cal. 2017) ( Gonzalez I ); Crosby v. Twitter, Inc. , 303 F.Supp.3d 564 (E.D. Mich. 2018) ; Force v. Facebook, Inc. , 304 F.Supp.3d 315 (E.D.N.Y. 2018).
More narrowly, Copeland asserts that in Fields the Ninth Circuit noted that:
the allegations in the SAC do not support a plausible inference of proximate causation between Twitter's provision of accounts to ISIS and the deaths of Fields and Creach. Plaintiffs allege no connection between the shooter, Abu Zaid, and Twitter. There are no facts indicating that Abu Zaid's attack was in any way impacted, helped by, or the result of ISI's presence on the social network.
Fields , 881 F.3d at 750. She claims that she made those allegations here. That is not true. As in Fields , there are no facts that ISIS communicated to Bouhlel or that Bouhlel expressed any connection to ISIS prior to the attack through any medium, must less use of defendants' platforms. Further, while she identifies ISIS materials that were viewed by Bouhlel prior to the attack, none of those materials were allegedly seen or hosted on defendants'
*974 platforms. For example, she does not allege that the calls by ISIS to use vehicles in attacks, much less attacks in France, were present on any of defendants' platforms. The only specific allegation regarding Bouhlel's use of defendants' services is that an accomplice sent him a message through Facebook to encourage the attack. FAC ¶ 376. But that is not an alleged communication from ISIS to Bouhlel. Nor is there any evidence that Facebook both knew of that one message and failed to remove or otherwise act on it.
The general allegations that Bouhlel was "radicalized" because of the ISIS content on defendants' sites are no different from the allegations made and rejected by the Ninth Circuit in Fields , and in Gonzalez II , Pennie , Crosby . A direct connection has not been alleged to plausibly plead proximate cause between ISIS's use of defendants' platforms and the Nice Attack.[3] Plaintiff's direct liability claims under § 2333(a) are DISMISSED with prejudice.
II. SECONDARY LIABILITY
Plaintiff argues that liability has nonetheless been adequately alleged under Section 2333(d) for aiding and abetting.[4] Defendants disagree because Section 2333(d) requires provision of assistance to the person, here Bouhlel, and not ISIS in general. No allegations have been or could be pleaded to show that. Materially similar claims to plaintiff's failed in part for the same reason in Taamneh , 343 F.Supp.3d at 915-16, 2018 WL 5729232, at *10 and Crosby , 303 F.Supp.3d at 574.
Even if Copeland only needed to allege facts showing that defendants aided and abetted ISIS or ISIS terrorist attacks in general, there are no plausible allegations *975 that this attack was carried out by ISIS. Instead, the facts as alleged show that ISIS took credit after the attack. Absent evidence that ISIS itself planned or carried out the attack, facts that ISIS sought to "generally radicalize" individuals and promoted terrorists attacks similar to the one Bouhlel carried out are insufficient. See Crosby , 303 F.Supp.3d 564.
Finally, even if these hurdles could be overcome, the "proper legal framework for how [aiding and abetting] liability should function" under the ATA is as identified in Halberstam v. Welch , 705 F.2d 472 (D.C. Cir. 1983) ; see Linde v. Arab Bank, PLC , 882 F.3d 314, 329 (2d Cir. 2018) ; Taamneh , 343 F.Supp.3d at 917, 2018 WL 5729232, at *11. Under Halberstam , in the civil context, "[a]iding-abetting includes the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." Halberstam , 705 F.2d at 477.
Copeland has failed to allege the second and third elements. Regarding intent under the second element, the Second Circuit in Linde explained that while a plaintiff does not have to show that the defendant knew of the specific attack at issue, she has to show more than just a defendant's knowledge of the foreign terrorist organization's connection to terrorism. Linde , 882 F.3d at 329-30. The plaintiff must show that the defendant intended to further the organization's terrorist activities or at least was "generally aware" that, through its actions, the defendant "was thereby playing a 'role' in [the organization's] violent or life-endangering activities." Id. at 329. That means more than just providing material support to such an organization.
Here, there are only allegations that defendants were "generally aware" that their services were used by ISIS, but no allegations that with that knowledge defendants were playing or assuming a role in ISIS's terrorist activities. See also Taamneh , 343 F.Supp.3d at 917, 2018 WL 5729232, at *11 ("There is no allegation, for example, that Defendants knew that ISIS members had previously used Defendants' platforms to communicate specific plans to carry out terrorist attacks. Defendants' purported knowledge that ISIS previously recruited, raised funds, or spread propaganda through Defendants' platforms that is more akin to providing material support to a foreign terrorist organization than assuming a role in terrorist activities."); Cain v. Twitter Inc. , No. 17-CV-02506-JD, 2018 WL 4657275, at *3 (N.D. Cal. Sept. 24, 2018) (dismissing complaint which did not "allege that Twitter was 'aware' that it was 'assuming a role in' the terrorists' attacks in Europe").
The third element under Halberstam requires Copeland to plead facts showing "substantial assistance" on the part of the defendant.
[F]actors relevant to determining how much encouragement or assistance is substantial enough to satisfy the third element: (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance
Linde , 882 F.3d at 329 (internal citation omitted); see also id. at 331 ("aiding and abetting focuses on the relationship between the act of international terrorism and the secondary actor's alleged supportive *976 conduct"). There are numerous failures to allege facts sufficient to support an allegation of substantial assistance: there is no evidence that defendants encouraged terrorist attacks, had advance knowledge of any attacks (much less that they were present), intended ISIS to carry out the attacks, or otherwise manifested a culpable state of mind.[5]
As one more in-depth example, in Halberstam the D.C. Circuit indicated that for factor (2), the assistance given by the defendant should play a "major part in prompting the tort" or be "integral" to the tort to be considered substantial assistance. Halberstam , 705 F.2d at 484. Here, Copeland fails to allege that defendants played a major or integral part in ISIS's terrorist attacks because there were no allegations that ISIS regularly used defendants' platforms to communicate with its "soldiers" or otherwise in support of its terrorist attacks. See also Taamneh , 343 F.Supp.3d at 917-18, 2018 WL 5729232 at *12 ; see also id. (fourth element not met where defendants only provided routine services generally available to members of the public). Her indirect, aiding and abetting, liability claims under § 2333(d) are DISMISSED with prejudice.
III. STATE LAW CLAIMS
That leaves Copeland's state law tort claims for negligent infliction of emotional distress (Fifth Cause of Action) and wrongful death (Eighth Cause of Action). Those claims also require allegations showing proximate cause between the acts of defendants and the Nice Attack. In Taamneh , Judge Chen concluded that even if these state law claim apply a lower, less demanding proximate cause standard than under the ATA, the materially similar allegations in that case failed to support proximate cause because allegations that the terrorist "was radicalized through Defendants' social media networks, that allegation is entirely conclusory in nature and fails to establish proximate cause even under the more lenient standard." Taamneh v. Twitter, Inc. , No. 17-CV-04107-EMC, 343 F.Supp.3d 904, 919, 2018 WL 5729232, at *13 (N.D. Cal. Oct. 29, 2018) ; see also Crosby v. Twitter, Inc. , 303 F.Supp.3d 564, 580 (E.D. Mich. 2018) (dismissing state law wrongful death claims for lack of proximate cause).
The same is true here. There are no allegations as to how Bouhlel was radicalized through use of use of defendants' services.
CONCLUSION
The motion to dismiss the FAC is GRANTED. In light of Copeland's failure to identify any facts that she could plead to overcome the decisions from this and other courts who have consistently rejected materially similar claims, the motion to dismiss is GRANTED without leave to amend and her claims are DISMISSED WITH PREJUDICE.
IT IS SO ORDERED.

As to the underlying ATA criminal acts, Copeland did not oppose dismissal of her Third Cause of Action (§ 2339A [provision of "material support or resources" by anyone "knowing or intending that they are to be used in preparation for, or in carrying out" terrorism] ) or her Sixth Cause of Action (§ 2339C(c) ["knowing concealment" by persons and entities in the United States or U.S. nationals of the "nature, location, source, ownership, or control of any material support or resources, or any funds or proceeds of such funds"] ). She opposed dismissal of her Fourth Cause of Action under § 2339B (providing "knowingly" provided "material support"). However, because I find that proximate cause has not and, given the discussion at the hearing on this motion, cannot be plausibly pleaded under the ATA for direct liability, I do not need to reach whether for purposes of direct liability plaintiff has also adequately alleged violation of § 2339B. If I did reach the issue, I would reject it for the same reasons as the materially relevant allegations in were rejected in Crosby v. Twitter, Inc. , 303 F.Supp.3d 564, 576-77 (E.D. Mich. 2018) ("Because the defendants must 'knowingly' provide support with some discernible apprehension that it could be used to facilitate terrorism, the failure to allege facts to show knowledge of a foreseeable connection to terrorist acts is fatal to the material support claims, particularly where the only allegations of the amended complaint are that the defendants provided 'routine' services knowing only generally that some (unidentified) users could be affiliated with terrorism.") (relying on Hussein v. Dahabshiil Transfer Services Ltd. , 230 F.Supp.3d 167, 176 (S.D.N.Y. 2017), aff'd sub nom. Hussein v. Dahabshiil Transfer Services Ltd. , 705 Fed. Appx. 40 (2d Cir. 2017) (unpublished) ). This analysis also disposes of her Seventh Cause of Action (International Emergency Economic Powers Act ["IEEPA"], 31 C.F.R. § 594.204(a) ), because both sides agree the analysis is the same as for § 2339B.

Defendants note that under this section, liability can attach for "aiding and abetting" or "conspiracy" and that plaintiff pleaded, in her Second Cause of Action, a conspiracy claim under 2333(d). Copeland made no argument in opposition and did not point to allegations regarding conspiracy in the FAC to show that she has adequately alleged a conspiracy claim. Therefore, only aiding and abetting is at issue and her Second Cause of Action is DISMISSED with prejudice.

Indeed, Copeland's own allegations show that defendants did take steps to "take-down" and otherwise block ISIS's efforts to use its platforms, see, e.g. , FAC ¶¶ 416, 519, 523, 535, 537, although she contends defendants could have and should have done more.